UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 05-41815 |
| | ) | Chapter 7 |
| PATRICIA M. CLAUSSEN | ) | |
| a/k/a Patricia M. Thorson | ) | |
| Debtor. | ) | |
| | | |
| JOHN S. LOVALD, TRUSTEE | ) | Adv. No. 06-4046 |
| Plaintiff, | ) | |
| -vs- | ) | DECISION RE: AVOIDANCE OF |
| | ) | TRANSFER RELATED TO DIVORCE |
| PATRICIA M. CLAUSSEN | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RONALD CLAUSSEN | ) | |
| Defendants. | ) | |

The matter before the Court is Trustee John S. Lovald's complaint against Debtor Patricia M. Claussen and her former husband, Ronald Claussen, seeking an avoidance of the transfer of certain property interests during the Claussens' divorce. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). This Decision and accompanying Order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052. As set forth below, Ronald Claussen and Debtor's temporary redistribution of equity in their marital home under their unrecorded, pre-petition divorce agreement and divorce decree is subordinate to Trustee Lovald's hypothetical lien under 11 U.S.C. § 544(a)(1).

I.

Ronald W. Claussen and Patricia M. Maher, each a single person, purchased a home in Brandon, South Dakota.[1] The warranty deed from the grantors stated Ronald

---

[1] The legal description for the home was set forth as Lot Five (5) in Block One (1) of Ames Subdivision, Brandon, Minnehaha County, South Dakota, according

and Patricia were taking the property as joint tenants with right of survivorship. The warranty deed was recorded December 7, 1983.

Ronald Claussen and Patricia Maher married, and Patricia apparently changed her name to Patricia M. Claussen. Ronald was a successful, independent businessman. Although Patricia was sometimes employed outside the home, Ronald's earnings were always greater than hers. Patricia's health limited her ability to work some jobs. For several years, beginning around 2000, Ronald gave Patricia $200.00 or $300.00 per month to spend at her discretion.

Ronald sought a divorce from Patricia in late July 2004. At the time, Patricia had significant credit card debt. With the aid of counsel, including a bankruptcy attorney who had been retained to file a bankruptcy petition on Patricia's behalf, the parties negotiated a division of marital assets and liabilities (the "divorce agreement"), which was incorporated into their September 26, 2005 divorce decree.[2] Pertinent provisions of the divorce agreement included:

> (1) Ronald would pay Patricia's bankruptcy attorney $1,409.00. Each party would pay their own divorce attorney.
>
> (2) Each party took certain personalty, including vehicles.
>
> (3) Ronald took the entire interest in his businesses, Ag Media Resources, Inc. and Community Advertising and Marketing Associates, Inc., the

---

to the recorded plat thereof.

[2] The copy of the divorce agreement received into evidence was notarized, not file stamped by the state court. The copy of the divorce decree received into evidence was file stamped by the state court.

business bank account, and any debt associated with the businesses.

(4) Patricia received an Edward Jones account (not valued in the divorce agreement), two SEPP IRAs with a total value of $26,869.56, and an annuity valued at $19,962.94.

(5) Each party took individual credit card debt, and Ronald also took the 2004 federal income tax liability.

(6) The parties agreed the marital home would remain in Patricia's possession. They further agreed:

> [T]he marital home has net equity of $95,454.00. [Patricia] will be awarded 30% of the net equity and [Ronald] will be awarded 70% of the next equity. [Patricia] shall purchase [Ronald's] net equity [in the marital home] in the amount of $66,812.80 at any time, but no later than October 1, 2008. [Ronald] will then execute a Quitclaim Deed to [Patricia] for said marital home. The Quitclaim Deed will not be filed until any outstanding mortgage has been paid in full. If the marital home is sold, by agreement of the parties, prior to repayment in full of any existing mortgage, the proceeds of the sale shall first be applied to the balance of the mortgage.

(7) Ronald would pay Patricia alimony of $3,000.00 per month for 48 months. Thereafter, his alimony payments to her would decrease to $1,500.00 and would be paid until Ronald turned age 67, one party died, or Patricia remarried or co-habitated with a male who was not a family member. From each monthly alimony payment, Ronald would pay $800.00 directly to the bank holding the mortgage on the marital home and the balance to Patricia. Ronald would also pay Patricia $5,000.00 within ten days of the entry of the divorce decree.

Neither the divorce decree nor the divorce agreement created a specific lien to secure one party's obligation to the other under the divorce agreement. A difficult to decipher "default" provision was set forth in paragraph number 16 of the divorce agreement.

The temporary adjustment of Patricia Claussen's and Ronald Claussen's relative interests in the marital home[3] was specifically calculated to keep Patricia Claussen's share under the $30,000.00 homestead exemption permitted by state law. No quit claim or other type of deed was recorded acknowledging the temporary redistribution of the parties' equity interests. No mortgage or other encumbrance was recorded on Ronald Claussen's behalf. The divorce decree was docketed by the county clerk of court.

The home's value in the divorce agreement was based on the assessed value by the county less 7% liquidation costs. The appraised value of the marital home as of October 3, 2005 was $142,000.00.[4]

Patricia Claussen ("Debtor") filed a chapter 7 petition in bankruptcy on October 3, 2005. She scheduled a home (not described) worth $132,000.00 with secured claims against it totaling $106,000.00. Debtor listed Wells Fargo Home

---

[3] As noted above, under the divorce agreement, Debtor had agreed to purchase Ronald Claussen's equity on or before October 1, 2008, by which time Debtor and Ronald Claussen likely assumed her bankruptcy case would be closed and the nonexempt equity in the marital home would no longer be subject to the jurisdiction of the bankruptcy court.

[4] The appraisal inspection was made December 13, 2006 to determine a value effective October 3, 2005. The appraiser made the "extraordinary assumption" there had been no significant changes in the overall condition of the property between October 3, 2005 and December 13, 2006.

-4-

Mortgage as holding the first mortgage for $39,000.00 and her former husband Ronald Claussen as holding a second mortgage for $67,000.00. Debtor stated she intended to reaffirm both mortgage debts. No reaffirmation agreements were ever filed. Debtor's scheduled personal property included household furnishings and clothes, a small amount of cash, an annuity valued at $19,962.94, some IRAs valued at $40,369.56, and one vehicle. She declared all her assets exempt. Her scheduled unsecured debt totaled $50,670.00.

On her schedule I, Debtor stated her only income was $2,179.00 in support payments. She did not list any dependents. Her expenses on schedule J essentially equaled her income.

Chapter 7 Trustee John S. Lovald objected to Debtor's claimed exemptions in the IRAs and the annuity in particular and the homestead in general. While he did not dispute Debtor could declare a homestead exemption, he stated he intended to file an adversary proceeding to have the mortgage held by Ronald Claussen set aside. He argued the parties' divorce agreement served only to hinder Patricia's bankruptcy creditors from realizing on the equity in the marital home. If he were successful, Trustee Lovald wanted to preserve for the bankruptcy estate any equity in the homestead above Debtor's allowed homestead exemption.

Debtor filed a response disputing the trustee's legal conclusions. She essentially acknowledged she had sought a division of marital debts in the divorce so as to maximize her available exemptions in her subsequent bankruptcy. Contrary to her

schedules, she stated she had not given her former husband a mortgage on the marital home.[5] Instead, she said the divorce agreement divided the net equity between the parties and included a provision allowing her to purchase Ronald Claussen's share anytime before October 1, 2008. Debtor also said she would be able to obtain a mortgage and buy Ronald Claussen's interest after she had consistently received alimony for two years. She stated she needed the IRAs and annuity to supplement her Social Security income.

Several days after filing her response, Debtor amended her Statement of Financial Affairs and certain schedules. In those amendments, she stated she owned 30% of the marital home and Ronald Claussen owned 70%. She valued her interest at $26,000.00 and her ex-husband's interest at $67,000.00. She stated "[o]wnership of the property is by deed and decree of divorce." She also stated Ronald Claussen did not hold a second mortgage. She described him as a co-debtor on the home's first mortgage. Debtor's Statement of Financial Affairs, question 10, was amended to disclose her divorce on September 26, 2005. Trustee Lovald's objection to Debtor's claimed exemptions was put on hold pending resolution of the adversary proceeding he planned to file.

On May 15, 2006, Trustee Lovald commenced an adversary proceeding against Debtor and Ronald Claussen. Trustee Lovald stated there had been sufficient non

---

[5] Debtor offered no explanation for this change in her description of Ronald Claussen's interest in the marital home, noting only that "[e]ven though [Ronald Claussen] was listed as a secured creditor in the schedules, that listing is inaccurate in accordance with the Divorce Decree."

exempt equity in Debtor's homestead before the divorce agreement to allow her to pay $50,000.00 in unsecured debt. He argued Debtor's transfer of her share of equity in the marital home to Ronald Claussen in their divorce in exchange for exemptible interests in IRAs and an annuity should be avoided under 11 U.S.C. § 548. He also argued the equity transfer was not properly perfected and should be avoided under 11 U.S.C. § 544.

In her answer, Debtor again acknowledged she bargained for a division of marital property so as to maximize her allowed exemptions and in light of her limited earning capacity. Debtor stated the division of marital assets and liabilities had been negotiated at arms' length. She also argued the division of marital assets under the divorce decree did not constitute a "transfer of property." Ronald Claussen answered the trustee's complaint with some general denials and admissions.

Each party filed a pre-trial brief. A trial was held January 3, 2007. Testimony was received from each defendant and their respective divorce counsel. At the close of testimony, Trustee Lovald clarified he was seeking relief under either § 544(a)(1) or §548(a)(1)(B).[6]

---

[6] While in her pre-trial brief Debtor-Defendant discussed only the application of § 544(a)(3), she did not interpose an objection to the trustee's end-of-trial clarification that he was relying on § 544(a)(1). Accordingly, any potential prejudice was waived by Debtor-Defendant. *See Albert Russo v. Ian McLaughlin(In re McLaughlin)*, 2006 WL 3796421, slip op at 4-7 (D.N.J. Dec. 20, 2006). Moreover, it is unlikely Debtor-Defendant's evidentiary presentation would have varied had the trial been more selectively focused on § 544(a)(1) from the inception.

II.

*Judicial lien creditor status*.  In this adversary proceeding, the question presented is the impact, if any, of 11 U.S.C. § 544(a)(1) on the temporary redistribution of equity Ronald Claussen and Debtor agreed to as part of their divorce. Under 544(a)(1), the trustee steps into the shoes of a judicial lien holder.  This statue provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, **the rights and powers** of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1) (emphasis added).[7]  With this particular "strong-arm power," which is unique to bankruptcy, the chapter 7 trustee's hypothetical judicial lien attaches to all property of the debtor and is superior to any other interest that is unperfected on the petition date. *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain, L.L.C.)*, 306 B.R. 624, 630 (B.A.P. 8th Cir. 2004).  The trustee is presumed to have no knowledge of any unperfected interest. *Strauss v. Chrysler Financial Co. (In re Prindle)*, 270 B.R. 743, 748 (Bankr. W.D. Mo. 2001).

---

[7] A judicial lien, as defined by 11 U.S.C. § 101(36) is a "lien obtained by judgment, levy, sequestration, or other legal or equity process or proceeding[.]"

*Nature and transfer of an interest in real property*.  While the trustee's hypothetical judicial lien is created by bankruptcy law, the Court must look to state law to determine the effect of that hypothetical lien. *Butner v. United States*, 440 U.S. 48, 54 (1979) (citing U.S. Const. Art. I, § 8, cl.4); *Eastern States Life Insurance v. Strauss (In re Crawford)*, 274 B.R. 798, 803-04 (B.A.P. 8th Cir. 2002).

Under South Dakota law, joint tenants each own an equal share of the real property.  S.D.C.L. § 43-2-12.  Each joint tenant is free to transfer their respective interest, subject to the limitations imposed by S.D.C.L. § 43-31-17, which requires both husband and wife to consent to the transfer of the family homestead, and S.D.C.L. § 43-25-1, which provides a transfer of real property can be made only by operation of law or written instrument.  Upon a transfer, the transferee is vested with "all the actual title to the thing transferred which the transferor then has, unless a different intention is expressed or is necessarily implied."  S.D.C.L. § 43-4-17.  A grant of an estate in real property is conclusive against the grantor and those claiming under him, "except a purchaser or encumbrancer who, in good faith, and for valuable consideration, acquires a title or lien by an instrument that is first duly recorded." S.D.C.L. § 43-25-3. When a transfer document is recorded with the county's Register of Deeds, the recordation provides "constructive notice of the execution of such instrument to all purchasers and encumbrancers subsequent to the recording." S.D.C.L. § 43-28-15. Finally,

> [e]very conveyance of real property other than a lease for a term not exceeding one year is void as against any subsequent purchaser or

-9-

> encumbrancer including an assignee of a mortgage, lease, or other conditional estate of the same property, or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded. The term "conveyance" as used in this section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered or by which the title to any real property may be affected, except wills and powers of attorney.

S.D.C.L. § 43-28-17.  A purchaser or encumbrancer is deemed not to have taken their interest in good faith if they have no actual knowledge of the prior encumbrance but have "knowledge of facts sufficient to put a prudent person upon inquiry." *Bucholz v. Hinzman*, 183 N.W. 993, 996 (S.D. 1921)(quoted in *Smith v. Hegg*, 214 N.W.2d 789, 792 (S.D. 1974)); S.D.C.L. § 17-1-4.  Stated another way, a purchaser or encumbrancer may not take in good faith if there has been "some clear neglect to inquire after having some notice of some definite equity or interest in another." *Madson v. Ballou*, 260 N.W. 831, 833 (S.D. 1935)  (quoted in *First National Bank in Brookings v. Kuechenmeister*, 639 N.W.2d 184, 187 (S.D. 2002)).  Therefore, an unrecorded conveyance, while binding on the parties, has no effect on a subsequent, good faith encumbrancer of record.  *The Schleuter Company, Inc., v. Sevigny*, 564 N.W.2d 309, 312 (S.D. 1997).

> The purpose and object of our system of laws for the recording of written instruments affecting the title to real estate cannot be misunderstood.  It is to give notice in the manner most likely to prove efficacious, to all who are or may become interested, of such contracts and agreements between parties as may affect the title to such real estate, or the rights and liabilities of parties who may deal in or with reference to it.

*Merrill v. Luce*, 61 N.W. 43, 45 (S.D. 1984)(cited in *Schleuter Co.*, 564 N.W.2d at 312).

-10-

III.

Two provisions within Debtor and Ronald Claussen's divorce agreement must be considered in light of Trustee Lovald's strong-arm powers under § 544(a)(1). The first is the awarding of 30% of the equity in the homestead to Debtor and 70% of that equity to Ronald Claussen, at least temporarily. The divorce agreement and divorce decree were not recorded with the county's Register of Deeds when Debtor filed her bankruptcy petition. Accordingly, neither document provided record notice under S.D.C.L. §§ 43-25-3 and 43-28-17 to any subsequent encumbrancer, including Trustee Lovald as a hypothetical judicial lienholder under § 544(a)(1), that Debtor and Ronald Claussen had temporarily adjusted their equity interests in their home via the divorce agreement. Thus, while this temporary adjustment of the equity pursuant to the divorce agreement may have been enforceable between Debtor and Ronald Claussen, it was not effective against Trustee Lovald in his capacity as a hypothetical judicial lienholder.[8]

Debtor's argument in her brief that the divorce agreement did not effect a "transfer" of equity in the marital home and that the continuing joint tenancy put Trustee Lovald on notice to check for a divorce proceeding involving the tenants is not persuasive. Foremost, a transfer *did* occur. Debtor admitted as much in her amended schedules when she disclosed Ronald Claussen's 70% interest in the marital home.

---

[8] Under similar facts and their respective state's laws, other courts have concluded a trustee's strong-arm powers under § 544(a) create an interest superior to an unrecorded, pre-petition divorce decree that transferred real property between a debtor and their spouse. *See., e.g., Phillips v. Chandler*, 215 B.R. 684 (E.D. Va. 1997), and *Mostoller v. Kelley (In re Kelley)*, 304 B.R. 331 (Bankr. E.D. Tenn. 2003).

While Debtor and Ronald Claussen may have agreed not to record a deed until the mortgage was paid in full, the court-approved divorce agreement nonetheless effected a transfer of equity in the marital home that was enforceable between Debtor and Ronald Claussen, a conclusion testified to by both Debtor's and Ronald Claussen's divorce attorneys during the adversary trial. That transfer of interest, whatever it may be denominated, clearly fell within the purview of a "conveyance" as defined by S.D.C.L. § 43-28-17.

Moreover, a "transfer" need not have occurred for § 544(a) to apply. As discussed above, that bankruptcy code section also gives the case trustee certain "rights and powers" under state law that he may exercise on behalf of the bankruptcy estate. In this case, Trustee Lovald was vested with the rights and powers of a judicial lienholder without notice, whose encumbrance has priority over unrecorded interests created by the divorce decree. 11 U.S.C. § 544(a)(1). Those unrecorded interests are not being avoided. They are instead being subordinated to the trustee's hypothetical judicial lien. The fact the unrecorded interest was created by a divorce agreement does not alone exempt the interest from the application of the bankruptcy code's avoidance statutes. *See, e.g., Dobin v. Hill (In re Hill)*, 342 B.R. 183, 196 (Bankr. D.N.J. 2006)(property settlement agreement subject to avoidance under 11 U.S.C. § 548); *Webster v. Hope (In re Hope)*, 231 B.R. 403, 413 (Bankr. D.D.C. 1999)(transfers under a divorce agreement are subject to avoidance under 11 U.S.C. §§ 547 and 548).

As to Debtor's argument the continuing joint tenancy put Trustee Lovald on

notice of the divorce agreement, Debtor did not cite any South Dakota statute or South Dakota case law in support of this "notice" theory. The four cases cited by Debtor in her brief in support thereof are all distinguishable on the facts and on the particular state statutes governing real property transfers.

Debtor cited *Owen-Ames-Kimball Co. v. Michigan Lithographing Co. (In re Michigan Lithographing Co.)*, 997 F.2d 1158, 1159-60 (6th Cir. 1993), in which a construction lien had been filed with the county's register of deeds, but no lis pendens had been recorded regarding the pending lien foreclosure action. The court concluded the lien would have put a bona fide purchaser on notice to inquire into the status of the lien, and the lien therefore constituted notice of the pending foreclosure action. In *Michigan Lithographing Co.*, Michigan state law was applied, and a lien had been recorded. Debtor did not show how the facts of the present adversary proceeding were similar or how South Dakota's law would produce the same result when no lien was recorded in connection with the divorce agreement and divorce decree.

In *Roost v. Wilber (In re Parker)*, 241 B.R. 722 (Bankr. D. Ore. 1999), *aff'd*, Table, No. OR-00-1074 (B.A.P. 9th Cir. Dec. 15, 2000), the court did not permit a chapter 7 trustee, as a hypothetical bona fide purchaser under § 544(a)(3), to avoid a transfer of property under a pre-petition divorce decree from the debtor to her ex-husband. In that case, however, a deed had been recorded pre-petition.[9] The *Parker*

---

[9] Under facts more similar to the matter before this Court, the bankruptcy court for the District of Oregon determined a chapter 7 trustee may use his status as a hypothetical bona fide purchaser under § 544(a)(3) to avoid an ex-spouse's interest in proceeds from a real estate sales contract where the contract right was created in a divorce decree but not recorded. *Michael A. Grassmuek, Inc. v. Clearwater-*

-13-

decision also referenced a specific Oregon statute, O.R.S. § 107.105, in support of its conclusion that a transfer of real property within a divorce decree, even if a deed is not recorded, has the same effect "as a transfer creating a resulting trust." *Parker*, 241 B.R. at 724-25. Debtor did not identify any similarly applicable South Dakota statute that indicates Debtor and Ronald Claussen's divorce agreement created any trust, whether equitable or legal, enforceable against Trustee Lovald as a hypothetical lien holder.

Debtor also cited *Farrey v. Sanderfoot*, 500 U.S. 291 (1991). In that case, a specific lien on real property was created during a pre-petition divorce. The Court refused to avoid the lien under 11 U.S.C. § 522(f)(1) because the lien attached at the same time the debtor acquired the interest in the real property to which the lien attached. In this case, § 522(f)(1) is not at issue, and Debtor and Ronald Claussen's divorce agreement did not create any lien.

Finally, Debtor cited *McCannon v. Marston*, 679 F.2d 13 (3rd Cir. 1982) for her "joint tenancy equals notice" theory. In *McCannon*, the trustee was not permitted to use his strong-arm powers to avoid a sale of a condominium, where the deed had not been recorded, but the purchaser was in possession of the unit. *Id*. at 16. The court relied on state law which held clear and open possession of real property constituted constructive notice that obligated a subsequent purchaser to inquire into the possessor's claimed interest. *Id.* Again, Debtor did not cite any South Dakota law

---

*Thompson (In re Clearwater)*, Bankr. No. 395-38048, Adv. No. 96-3367, 1997 WL 101975, at *2-4 (Bankr. D. Ore. Feb. 28, 1997).

that compels a similar conclusion here, nor did Debtor's continued possession of her home provide any notice of the equity transfer to Ronald Claussen.

The second provision of the divorce agreement at issue provides:

> [Debtor] shall purchase [Ronald Claussen's] net equity in the amount of $66,812.80 at any time, but no later than October 1, 2008. [Ronald Claussen] will then execute a Quitclaim Deed to [Debtor] for said marital home. The Quitclaim Deed will not be filed until any outstanding mortgage has been paid in full.

Clearly, neither this provision nor any other provision in the divorce agreement or divorce decree gave either party any special lien or mortgage on the other's property interests under S.D.C.L. § 25-4-42 to secure their respective compliance with the divorce agreement. *See Grode v. Grode*, 543 N.W.2d 795, 803 (S.D. 1996)). *Muhlenkort v. Union County Land Trust*, 530 N.W. 2d 658, 662 (S.D. 1995)(a lien created by a divorce judgment is a special lien under S.D.C.L. § 44-1-2). Debtor and Ronald Claussen both acknowledge that fact. Whether this provision, as an incorporated part of the divorce decree, constituted a general judgment lien under S.D.C.L. § 15-16-7 is a more difficult question. However, the Court concludes a general judgment lien was not created.[10]

The provision of the divorce agreement quoted above did not award a specific sum of money to Ronald Claussen. *See Kerr v. Kerr*, 54 N.W.2d 357, 359 (S.D. 1952) (a judgment for installment payments for alimony or support do not become a

---

[10] The issue of whether Ronald Claussen has an unsecured claim against Debtor, and thus the bankruptcy estate, arising from this provision of the divorce agreement may have to be addressed if and when Trustee Lovald requests proofs of claims from creditors.

judgment lien though a one for a fixed gross sum may).[11]  Rather, it simply directed Debtor to purchase Ronald Claussen's net equity in the home for an agreed price at some time in the future, but no later than October 1, 2008.  While some argument could be made this declaration is a type of judgment recognized by S.D.C.L. § 15-16-2, a statute clearly applicable in a foreclosure proceeding where the sale is by a court officer, it is also clear this provision of the divorce agreement was not a money judgment recordable as such by the clerk of court under § 15-16-5 and -6.  Consequently, since there was no money judgment under § 15-16-5, there was no judgment lien under § 15-16-7.

Trustee Lovald's hypothetical lien under § 544(a)(1) attached to Debtors' share of the equity in the marital home based on the recorded joint tenancy on the petition date, subject to prior recorded encumbrances.  The home's appraised value as of October 3, 2005[12] was $142,000.00, and the mortgage against it on October 3, 2005 was $36,649.57,[13] leaving equity of $105,350.43.  Debtor's share of that equity

---

[11] The court in *Kerr* did not address whether the specific provisions of S.D.C.L. § 25-4-42 regarding the creation of security for the performance of an obligation under a divorce decree excludes the application of the general judgment lien provisions of S.D.C.L. § 15-16-7.

[12] At the January 3, 2007 trial, Debtor testified she thought the house was worth less but it was unclear whether her personal assessment was as of the petition date or the trial date, and it was equally unclear what she thought the actual value was.  Accordingly, the formal appraisal best reflects the value of the home on the petition date.

[13] Two creditors were listed on Debtor's schedule of secured claim holders, but their security interests were not described.  If these creditors held pre-petition money judgments entered in Minnehaha County or other recorded encumbrances, the equity in the marital home would be further reduced by the amount of those judgment liens.

under the joint tenancy was thus $52,675.21. After application of Debtor's $26,000.00 homestead exemption, Trustee Lovald is deemed to hold a judicial lien for $26,675.21 under § 544(a)(1). The estate's interest will be realized when Trustee Lovald seeks court approval for a sale of the marital home under 11 U.S.C. §§ 363(h) and 704(1) and Fed.R.Bankr.P. 7001(3).

The Court need not reach the question of whether the defendants' equity adjustment in the marital home constituted a voidable constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). The Court also does not reach issues raised by Trustee Lovald in his brief and by Debtor at trial regarding Debtor's ability to amend her schedules to increase her homestead exemption claim to $30,000.00. Debtor has not amended her schedules, so the issue is not before the Court.

An appropriate order and judgment will be entered.

Dated: March 23, 2007.

BY THE COURT:

*[signature]*

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota